UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MELISSA KITE, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> DENTOLOGIE, P.C. and DENTOLOGIE ENTERPRISES, INC., <br><br> Defendants. | No. 25 CV 06951 <br><br> Judge Thomas M. Durkin |

**Memorandum Opinion and Order**

Melissa Kite filed this class action lawsuit against Dentologie, P.C. and Dentologie Enterprises, Inc. (together, "Dentologie"). Dentologie contends that this dispute is subject to an arbitration agreement and so moves to compel arbitration. R. 15. For the following reasons, that motion is denied.

**Background**

In May 2023, Kite visited Dentologie's website and scheduled a dentist appointment. After booking the appointment, Kite began receiving targeted advertisements for similar products and services. Kite brings this class action lawsuit alleging that Dentologie unlawfully disclosed her protected health information and personally identifiable information to third parties, including Google, in violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2511, *et seq.*, the Illinois Eavesdropping Act, 720 ILCS 5/14-1, *et seq.*, and other common law claims.

However, Dentologie contends that Kite is bound by an arbitration agreement. Since August 2020, Dentologie's website has contained a hyperlink located in the footer of every page of the website entitled "Terms of Service."



When one clicks on the Terms of Service hyperlink, they are taken to the following page:



Within these Terms of Service are clauses requiring all disputes and claims arising between the website user and Dentologie to be arbitrated and waiving class action relief. Dentologie moves to enforce these provisions and dismiss Kite's complaint.

**Discussion**

"Under the [Federal Arbitration Act], arbitration should be compelled if three elements are present: (1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 753 (7th Cir. 2017). A "party 'cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Id.* (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). "Whether an agreement to arbitrate has been formed is governed by state-law principles of contract formation." *Domer v. Menard, Inc.*, 116 F.4th 686, 694 (7th Cir. 2024). In Illinois, "[f]ormation of a contract requires mutual assent," which is analyzed using an objective standard. *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016). The party seeking to compel arbitration bears the burden of proving that the agreement to arbitrate exists. *Domer*, 116 F.4th at 694.

Kite does not contest that the Terms of Service contain an arbitration agreement. She instead disputes whether she agreed to be bound by those Terms of Service in the first place.

When considering online agreements, courts often group them into two categories: clickwrap agreements and browsewrap agreements. Clickwrap agreements have "I accept" buttons or boxes that a customer clicks. *See id.* In contrast, browsewrap agreements "provide veiled notice to customers that mere use of the website constitutes agreement to various terms and conditions . . . [and] typically are not enforced." *Id.* at 695; *see also Oberstein v. Live Nation Ent., Inc.*, 60

3

F.4th 505, 513 (9th Cir. 2023) ("Courts are generally reluctant to enforce such agreements because they often leave users unaware that contractual terms were even offered, much less that continued use of the website will be deemed to manifest acceptance of those terms.") (citations and internal quotation marks omitted). There are also "hybrid" agreements that "prompt the user to manifest assent after merely presenting the user with a hyperlink to the terms and conditions, rather than displaying the terms themselves." *Wilson v. Redbox Automated Retail, LLC*, 448 F. Supp. 3d 873, 882 (N.D. Ill. 2020).

Here, the arbitration agreement is only accessible to users by clicking on the Terms of Service hyperlink located at the bottom of Dentologie's website. Thus, this is a quintessential browsewrap agreement. *See, e.g.*, *Davis v. e.l.f. Cosmetics, Inc.*, No. 22 C 5069, 2024 WL 2722663, at *4 (N.D. May 28, 2024). "In browsewrap agreements, [ ] simply continuing to use the website is taken as assent, albeit passive, to the site's terms and conditions." *Kukovec v. Estée Lauder Companies, Inc.*, No. 22 CV 1988, 2022 WL 16744196, at *5 (N.D. Ill. Nov. 7, 2022) (citations omitted).

To "avoid the unfairness of enforcing contractual terms that consumers never intended to accept, courts confronted with online agreements such as those at issue here have devised rules to determine whether meaningful assent has been given." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). If a website owner cannot show the user had actual knowledge, then a user's passive assent is only enforceable if: "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action,

4

such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Domer*, 116 F.4th at 695 (quoting *Berman*, 30 F.4th at 856). At this stage, although the "questions may involve underlying facts," the court is addressing "questions of law" by undertaking "a fact-intensive legal analysis." *Id.*

I. Reasonably Conspicuous Notice

As there is no evidence that Kite had actual knowledge of the Terms of Service, and Dentologie makes no argument to the contrary, notice must be established through constructive notice. "Constructive notice depends on the design and content of the website itself." *Hussein v. Coinabul, LLC*, No. 14 C 5735, 2014 WL 7261240, at *2 (N.D. Ill. Dec. 19, 2014) (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014)). The Seventh Circuit instructs court to consider five factors when deciding whether a disclosure has afforded fair notice: "(1) the simplicity of the screen; (2) the clarity of the disclosure; (3) the size and coloring of the disclosure's font; (4) the spatial placement of the hyperlink; and (5) the temporal relationship to the user's action." *Domer*, 116 F.4th at 695. No single factor is dispositive; instead, the focus is on whether reasonable notice was provided when considering the whole website. *Id.*

Weighing these factors here, the Court finds that Dentologie's browsewrap arbitration agreement was not sufficiently conspicuous to constitute constructive notice of the agreement to arbitrate. The Terms of Service hyperlink is in contrasting colors (white-on-black) and becomes green when hovered over signifying the text is clickable. Yet the text is not in all caps or bold. It is also located at the bottom of the webpages among several other links that have the same font and contrasting colors,

whereas Dentologie's social media links are underlined and have larger font sizes dwarfing the Terms of Service hyperlink. Finally, the only way for users to be aware of the arbitration agreement would be to scroll to the bottom and click on the Terms of Service link. Users of Dentologie's website could access and use it without ever being aware of the Terms of Service. Therefore, Kite did not have constructive notice of the arbitration agreement. *See, e.g.*, *Davis*, 2024 WL 2722663, at *4 (finding no constructive notice where the link was not in caps or bold and in the footer among other links); *Kukovec*, 2022 WL 16744196, at *6 ("A website design that requires users to scroll all the way to the bottom to even become aware of the site's terms and conditions, then requires them to click on a buried link to learn the content of those terms and conditions, does not put a user on constructive notice.") (citations omitted).

II. Unambiguously Manifest Assent

Even if Dentologie's terms were reasonably conspicuous, Kite must unambiguously manifest assent to the terms. *See Domer*, 116 F.4th at 695. In the online context, "Illinois contract law requires that a website provide a user reasonable notice that his use of the site or click on a button constitutes assent to an agreement." *Sgouros*, 817 F.3d at 1036; *see also Berman*, 30 F.4th at 857–58 ("The presence of an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound is critical to the enforceability of any browsewrap-type agreement.") (citation and internal quotation marks omitted).

In using the website, Kite did not take any action that unambiguously manifested her assent to be bound by the terms and conditions. Kite was presented

with no requirement to click or acknowledge the Terms of Service, or a notice that continued use of Dentologie's website would be subject to the Terms of Service. *See Berman*, 30 F.4th at 858 ("[T]he notice must explicitly notify a user of the legal significance of the action she must take to enter into a contractual agreement.").

Dentologie contends that Kite's continual use of the website and scheduling an appointment on the website objectively show Kite's assent to be bound by the arbitration agreement. However, beyond the hyperlink located at the bottom of each webpage, Dentologie puts forth no evidence that Kite was presented with a separate pop-up or acknowledgment directing her to Dentologie's Terms of Service before using the website or scheduling her appointment. *See Sgouros*, 817 F.3d at 1036 (rejecting TransUnion's argument that plaintiff's use of the website and the purchase of the credit score amounted to acceptance of the Service Agreement by conduct because the "site did not contain any requirement that Sgouros agree to abide by any terms and conditions, nor did it warn the user that by completing a purchase he would be bound by the terms"). Therefore, on this record, Kite did not assent to the arbitration agreement.

## Conclusion

For the foregoing reasons, Dentologie's motion to compel arbitration is denied without prejudice.[1]

---

[1] Because Dentologie has not carried its burden to demonstrate that Kite entered into the arbitration agreement, the Court need not address Dentologie's remaining arguments regarding the arbitrability of the dispute. *See K.F.C. v. Snap Inc.*, 29 F.4th 835, 837 (7th Cir. 2022) ("[T]he arbitrator cannot resolve any issues until the court

7

ENTERED:

_Thomas M Durkin_

———————————————
Honorable Thomas M. Durkin
United States District Judge

Dated: December 10, 2025

---

has ascertained that there is an actual agreement; the breadth of a delegation is irrelevant if the parties did not enter into a contract.").

8